IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


GALAXY CSI, LLC,

       Plaintiff,

vs.                                                                                  No. 03-CV-1453 JC/ACT

LOS ALAMOS NATIONAL BANK,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

       THIS MATTER comes before the Court on Los Alamos National Bank's Motion for Partial Summary Judgment, filed May 23, (*Doc. 25*) ("Motion"). The primary issue before the Court is whether judicial estoppel operates to preclude Plaintiff from arguing its position in this diversity lawsuit. Having considered the Motion, the parties' submissions, the record, the relevant authority, and being otherwise fully advised, the Court finds the Motion not well-taken and it is denied.

**I.**        **Procedural Background**

       On September 19, 2003 Galaxy CSI, LLC ("CSI") filed this action in the 125th District Court of Harris County, Texas against Defendant, Los Alamos National Bank ("LANB"), claiming breach of contract and breach of warranty. On October 15, 2003, pursuant to 28 U.S.C. § 1332(a),

Defendant removed the case to the United States District Court for the Southern District of Texas, Houston Division. In December 2003, the Honorable Sim Lake determined that venue was improper for lack of personal jurisdiction over LANB. Judge Lake exercised his discretion and transferred the case to the District of New Mexico. Upon transfer to this District, the case was first assigned to Magistrate Judge Karen Molzen then reassigned to the Honorable Martha Vásquez. On February 11, 2004, LANB filed its Counterclaim. On June 18, 2004, the case was transferred to the Honorable Judith Herrera. On July 8, 2004, LANB filed its Notice of Completion of Briefing on this Motion. On November 23, 2005, the case was reassigned from Judge Herrera to the Honorable John Edwards Conway.

**II.     Factual Background**

At some time prior to January 1, 2003, LANB made a loan to a third party, Galaxy Computer Services, Inc. ("Galaxy") in exchange for a security interest in certain collateral. At or around the same time, CSI's parent company, Pinnacle Financial Strategies ("PFS") was contemplating an acquisition of Galaxy. In that context, while undertaking due diligence, PFS representatives communicated with LANB about Galaxy's debt to LANB. Galaxy was later afflicted with financial difficulties which were known by LANB and PFS. Evidently anticipating either a joint venture with Galaxy or the acquisition of Galaxy's assets, PFS then loaned money to Galaxy, wiring funds to LANB on Galaxy's behalf, and created a Texas-based subsidiary, namely CSI. Galaxy subsequently defaulted on its LANB loan. In the wake of the default, LANB planned to foreclose on Galaxy's pledged assets and CSI became aware of this development. LANB representatives then contacted William Bracken, Chief Financial Officer of both PFS and CSI, who expressed an interest in bidding on Galaxy's assets.

On March 20, 2003, CSI presented LANB with a written bid to purchase "all of the accounts (including accounts receivables) and contracts" of Galaxy for $430,000. The bid stated:

> In connection with the sale, CSI hereby submits to the bank a bid for the collateral in the amount of Four Hundred Thirty Thousand Dollars and 11/100 Dollars ($430,000) ("Bid"). If CSI is the highest bidder for the collateral of the sale the aggregate amount of the bid shall be paid in cash by April 10, 2003, as set forth below.
> 
> CSI shall place the bid amount into an interest bearing account (the "Escrowed Amount"). *The Escrowed Amount shall be released and delivered to the bank when CSI has received all consents, approvals and novation necessary to assign the contracts with government entities or the rights thereunder to CSI, each such consent, approval or novation in form and substance satisfactory to CSI.* In the event CSI fails to obtain any such consent, approval or novation, on or before April 10, 2003, the Escrowed Amount and any interest thereon shall be returned to CSI and the Collateral shall be returned to the Bank unless otherwise agreed to in writing by CSI.

*See* Doc. 33, ¶¶ 9, 10 (emphasis added). LANB accepted the bid. On March 31, 2003, LANB and CSI executed a Bill of Sale memorializing LANB's sale to CSI of "all of the accounts (including accounts receivable) and contracts" of Galaxy. Following execution of the Bill of Sale, CSI wired $430,000 from Texas to LANB in New Mexico, which funds CSI now contends were to be deposited into an interest-bearing escrow account by LANB.

On May 7, 2003, Galaxy filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. As a result of that filing, federal law automatically stayed any effort by CSI, LANB, or others from seeking and obtaining satisfactory "consents, approvals and novations necessary to assign [Galaxy's] contracts with government entities or the rights thereunder to CSI."

LANB's Motion "is based exclusively upon pleadings filed by CSI in the Galaxy Bankruptcy case, the Galaxy CSI Adversary and the U.S.A. Adversary, transcripts of hearings conducted in those cases, CSI's responses to LANB's Requests for Admissions, and CSI's interrogatory responses."

3

Mot. at 4. In short, LANB contends that CSI should be estopped form arguing that it was never assigned the government contracts it bargained for because CSI successfully asserted, and ultimately benefitted from, a clearly contrary position in the bankruptcy-related litigation.

CSI claims in this lawsuit that, *inter alia*, LANB breached its obligation to return the purchase money plus interest ("escrowed amount") where CSI was never satisfactorily assigned the government contracts. In response to LANB's Motion, CSI offers evidence that it previously represented only that CSI had been performing government contracts on an interim basis while anticipating assignment thereof, a fact which goes undisputed. Thus, CSI contends it should not be estopped from claiming LANB breached its obligation to return the escrowed amount absent assignment, even if judicial estoppel is available in this case, which CSI believes it is not.

### III.   Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

**IV.**     **Discussion**

In the present Motion, LANB seeks (1) summary judgment on CSI's claims against LANB; and (2) partial summary judgment in LANB's favor against CSI on LANB's counterclaim. The judgments LANB seeks rest entirely on a determination that the doctrine of judicial estoppel precludes CSI from arguing that CSI "did not obtain satisfactory consents, approvals and novations necessary to assign the contracts with government entities or the rights thereunder to CSI" as justification for its request for damages from LANB in the instant case.

On May 17, 2003, Galaxy filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court, Eastern District of Virginia, Alexandria Division. LANB contends that CSI successfully argued and maintained a contrary position in the Chapter 11 Bankruptcy cases of *In re: Galaxy Computer Services, Inc.*, filed May 7, 2003; *Galaxy Computer Services, Inc. v. Galaxy Computer Services, Inc. v. Galaxy CSI, LLC, Dr. Lara H. Baker, Gary W. Sullivan, Los Alamos National Bank and MJCM, LLC d/b/a Pinnacle Financial Strategies*, filed May 15, 2003; and *United States of America v. Galaxy Computer Services, Inc., Galaxy CSI, LLC and Los Alamos National Bank*, No.

03-01272. LANB asserts that because this case is before the Court on diversity jurisdiction, New Mexico precedent on application of the doctrine of judicial estoppel should apply. LANB then concludes that such precedent renders the doctrine both available and appropriate for application here.

CSI responds that (1) the doctrine of judicial estoppel is unavailable because federal law governs its application and it has been wholly rejected by the Tenth Circuit; and (2) no position CSI maintained in the underlying bankruptcy cases is inconsistent with any position it takes in this litigation, which renders the doctrine inapposite even if available.

### A. Judicial Estoppel is Recognized by Both New Mexico and Tenth Circuit Law

The parties meticulously briefed the question of whether judicial estoppel is available for application in this case. In the initial stages of briefing, that issue was in significant part contingent upon whether the doctrine constitutes substantive or procedural law for purposes of *Erie R. Co. v. Tompkins*, 304 U. S. 64 (1938), as the Tenth Circuit had consistently and decidedly declined to recognize judicial estoppel while New Mexico had long embraced it.[1]  *See, e.g., In re Madison*, 32 N.M. 252 (1927). More recently, however, the law on judicial estoppel was altered in the Tenth Circuit. *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005) ("[a]lthough this Circuit has repeatedly refused to apply [the doctrine of judicial estoppel], *United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713, 726 (10th Cir. 2000); *United States v. 49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir. 1986)...the Supreme Court's intervening decision in New Hampshire has

---

[1] Substantive issues, of course, are determined by New Mexico law, as the jurisdiction of this Court is based on diversity of citizenship pursuant to 28 U. S. C. § 1332( a ), *Erie R. Co., v. Tompkins*, 304 U. S. 64 (1938), while procedural issues are governed by federal law. *Gasperini v. Center for Humanities, Inc.*, 518 U. S. 415 (1996).

altered the legal landscape. Accordingly, we must follow the guidance of the Court's binding precedent.").

Following *Johnson*, both parties briefed the estoppel issue even further. LANB overstates the impact of *Johnson* on this case, asserting that "under *Johnson*, summary judgment favoring LANB is mandated." LANB's Supp. Mem. at 4. CSI, on the other hand, rebuffs *Johnson*, reciting the well-settled legal principles establishing that a three-judge Tenth Circuit panel cannot overrule existing precedent from the Tenth Circuit without (1) *en banc* reconsideration of such earlier precedent; (2) a superceding decision by the United States Supreme Court; or (3) circulating a proposed opinion to all active members of the circuit, who must unanimously agree to the change. *See, e.g., Broomes v. Ashcroft*, 358 F.3d 1251 (10th Cir. 2004); *U.S. v. Meyers*, 200 F.3d 715, 721 & n.3 (10th Cir. 2000). CSI further reminds the Court that if two Tenth Circuit panel decisions are in conflict, the earlier decision takes precedence over the later one. *See Hiller v. Oklahoma ex. rel. Used Motor Vehicle and Parts Commission*, 327 F.3d 1247, 1250-51 (10th Cir. 2003). Ultimately, CSI states that the Tenth Circuit panel in *Johnson* inaccurately construed the Supreme Court's opinion in *New Hampshire* as being an intervening contrary authority, wholly rejecting any notion that the Tenth Circuit properly overruled existing precedent. Pl's Resp. to Def's. Supp. Mem. at 8 (stating that *New Hampshire* "hardly qualifies as an intervening authority."). Substituting its own interpretation of the law for that of the Tenth Circuit, CSI concludes that rejection of judicial estoppel as articulated in the earlier Tenth Circuit opinions remains the law in the Tenth Circuit, notwithstanding *Johnson.*

The Court determines that in *Johnson*, the Tenth Circuit deliberately joined the majority of circuits recognizing the doctrine of judicial estoppel and it did so as a result of the Supreme Court's

binding opinion in *New Hampshire*, which constitutes a superceding precedent for purposes of overruling existing precedent. Indeed, this District has interpreted and applied *Johnson* accordingly. *See, e.g., Rio Grande Silvery Minnow, et al v. Keys, et al*, No. CIV 99-1320 JP/RHS (D.N.M. July 25, 2005); *Miller v. Bd. of Ed. of Albq. Pub. Schs.*, No. CIV 05-502 MCA/WPL (D.N.M. Jan. 18, 2006); *cf Sain v. EOC Resources, Inc.*, No. CIV 05-0180 RB/RHS (D.N.M. Sept. 14, 2005). Consequently, the Court need not engage in *Erie* analysis for purposes of this Motion, for the doctrine is available under either New Mexico[2] or federal law.

Availability of judicial estoppel established, the remaining questions before the Court are: (1) whether discretionary application of the doctrine is warranted; (2) if so, whether CSI's claims survive summary judgment; and (3) whether partial summary judgment is proper on LANB's counterclaims.

### B.     This Case is not Appropriate for Discretionary Application of Judicial Estoppel

Judicial estoppel is a discretionary remedy designed to prevent the improper use of the judicial process and is defined as follows: "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakalee*, 156 U.S. 680, 689 (1895)). Accordingly, the principle of judicial estoppel generally requires application of a three-part test. First, a party must take a position that is clearly inconsistent with a position the party took previously. Second, a court must have been persuaded to accept the party's earlier position such that judicial acceptance of the subsequent inconsistent position would create the perception that one of the courts

---

[2]The parties apparently do not disagree that insofar as state law governs the substantive issues, it is New Mexico state law.

was being misled. Finally, the party seeking to assert the inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if judicial estoppel is not applied. *Id*.

In the *Johnson* case, a father and son were estopped from challenging the circumstances surrounding their arrest in a civil suit because they had entered pleas in abeyance in response to an assault charge in a Utah state court, in which they had admittedly attempted to use unlawful force to do bodily injury to a police officer creating legitimate grounds for arrest. Based on their prior admissions, the state court's acceptance of the pleas, and resulting benefits to the father and son therefrom, the Tenth Circuit determined that allowing the men to challenge the circumstances of their arrest in a subsequent civil action would create a clear perception that either the Utah court or the district court had been misled. Thus, discretionary application of the doctrine of judicial estoppel was warranted.

Here, LANB urges that CSI currently attempts to establish that it never concluded its purchase of the assets from LANB and should receive a refund from LANB, while CSI prevailed on its contrary position that it "bought these same assets from LANB for cash at a proper, legal, valid foreclosure sale conducted in accordance with state law." LANB's Supp. Mem. at 4. At first glance, CSI's positions appear irreconcilable. Upon further inquiry, however, it becomes evident that CSI can legitimately represent both (1) that it had been *performing* the bargained for government contracts (while pursuing assignment) for purposes of the bankruptcy and adversary litigation and also that (2) it was never actually *assigned* the government contracts for purposes of its purchase agreement with LANB.

When directing the Court to the bankruptcy proceedings, LANB demarcates CSI's position in those cases by isolating certain language. LANB asserts that "from mid-May 2003 through May

9

24, 2004, CSI has repeatedly and consistently assumed the position in the Galaxy Bankruptcy Case, the Galaxy-CSI Adversary and the USA Adversary that (a) it bought and paid for the collateral; (b) it was performing government contracts previously belonging to Galaxy after review by the government and with the government's consent; and (c) it owned contract proceeds and was entitled to payment from those contracts." LANB's Mem. in Supp. at 8.   Evaluating that language in its proper context, however, shows no clear inconsistency warranting an exercise of this Court's discretion to bar Plaintiff's claims.  There is insufficient evidence that CSI previously argued to the bankruptcy court that the transaction was complete in all aspects, which might foreclose CSI's claim that satisfactory assignment of the government contracts, for purposes of proper disposal of the escrowed amount, did not take place.  LANB, however, provides no convincing explanation for why interim *performance* of the classified government services is not clearly distinct from actual *assignment* of those contracts.  The two terms have separate meanings on their face, and the Court finds no grounds in context to alter those meanings.  In summary, LANB has failed to establish that CSI takes a position that is clearly contrary to a position taken in a past proceeding.

## V.      Conclusion

Because the summary judgment dispositions requested by LANB's Motion on both CSI's claims and LANB's counterclaims are predicated wholly on operation of the doctrine of judicial estoppel, which the Court has declined to apply, the Motion must be denied in its entirety.

WHEREFORE,

**IT IS ORDERED** that Los Alamos National Bank's Motion for Partial Summary Judgment, filed May 23, (*Doc. 25*), is DENIED.

Dated May 25, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

>   Matthew L. Hoeg, Esq,
>   W. Earl Touchstone, Esq.
>   Andrews & Kurth, LLP
>   Houston, Texas

>   Victor Ortega, Esq.
>   Montgomery & Andrews, P.A.
>   Santa Fe, New Mexico

Counsel for Defendant:

>   Julia B. Rose, Esq.
>   Mary E. Walta, Esq.
>   Santa Fe, New Mexico