IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GALAXY CSI, LLC,

        Plaintiff,

vs.                                                                                           No. 03-CV-1453 JC/ACT

LOS ALAMOS NATIONAL BANK,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Plaintiff Galaxy CSI's Motion for Partial Summary Judgment*, filed October 6, 2004 (*Doc. 80*). The question before the Court is whether genuine issues of material facts exist on Plaintiff's claim for breach of contract (Count I). The Court, having considered the Motion, the parties' submissions, the relevant authority, and being otherwise fully advised, finds factual issues in need of resolution on Count I and the Motion is, therefore, denied.

**I.     Procedural Background**

On September 19, 2003 Galaxy CSI, LLC ("CSI") filed this action in the 125th District Court of Harris County, Texas against Defendant, Los Alamos National Bank ("LAND"), claiming breach of contract and breach of warranty. On October 15, 2003, pursuant to 28 U.S.C. § 1332(a), Defendant removed the case to the United States District Court for the Southern District of Texas, Houston Division. In December 2003, the Honorable Sim Lake determined that venue was improper for lack of personal jurisdiction over LAND. Judge Lake exercised his discretion and transferred the case to the District of New Mexico. Upon transfer to this District, the case was first assigned to U.S.

Magistrate Judge Karen Molzen, then reassigned to the Honorable Martha Vásquez. On June 18, 2004, the case was transferred to the Honorable Judith Herrera. On February 11, 2004, LAND filed its Counterclaim. On November 22, 2004, the briefing was completed on the present Motion. On November 23, 2005, the case was reassigned from Judge Herrera to the Honorable John Edwards Conway.

## II.     Factual Background

At some time prior to January 1, 2003, LAND made a loan to a third party, Galaxy Computer Services, Inc. ("Galaxy") in exchange for a security interest in certain collateral. At or around the same time, CSI's parent company, Pinnacle Financial Strategies ("PFS") was contemplating an acquisition of Galaxy. In that context, while undertaking due diligence, PFS representatives communicated with LAND about Galaxy's debt to LAND. Galaxy was later afflicted with financial difficulties which were known by LAND and PFS. Evidently anticipating either a joint venture with Galaxy or the acquisition of Galaxy's assets, PFS then loaned money to Galaxy, wiring funds to LAND on Galaxy's behalf, and created a Texas-based subsidiary, namely CSI. Galaxy subsequently defaulted on its LAND loan. In the wake of the default, LAND planned to foreclose on Galaxy's pledged assets and CSI became aware of this development. LAND representatives then contacted William Bracken, Chief Financial Officer of both PFS and CSI, who expressed an interest in bidding on Galaxy's assets.

On March 20, 2003, CSI presented LAND with a written bid (hereinafter "Bid") to purchase "all of the accounts (including accounts receivables) and contracts"of Galaxy for $430,000. The bid stated in pertinent part:

2

> In connection with the sale, CSI hereby submits to the bank a bid for the collateral in the amount of Four Hundred Thirty Thousand Dollars and 11/100 Dollars ($430,000) ("Bid"). If CSI is the highest bidder for the collateral of the sale the aggregate amount of the bid shall be paid in cash by April 10, 2003, as set forth below.
>
> CSI shall place the bid amount into an interest bearing account (the "Escorted Amount"). The Escorted Amount shall be released and delivered to the bank when CSI has received all consents, approvals and novation necessary to assign the contracts with government entities or the rights thereunder to CSI, each such consent, approval or novation in form and substance satisfactory to CSI. In the event CSI fails to obtain any such consent, approval or novation, on or before April 10, 2003, the Escorted Amount and any interest thereon shall be returned to CSI and the Collateral shall be returned to the Bank unless otherwise agreed to in writing by CSI.

*See* Doc. 33, ¶ ¶ 9, 10. LAND accepted the bid. On March 31, 2003, LAND and CSI executed a Bill of Sale memorializing LAND's sale to CSI of "all of the accounts (including accounts receivable) and contracts" of Galaxy.[1] Following execution of the Bill of Sale, CSI wired $430,000 from Texas to LAND in New Mexico, which funds CSI now contends it believed were deposited into an interest-bearing escrow account with LAND.

---

[1] Notably, in the Chapter 11 Bankruptcy case of Galaxy Computer Services, Inc. ("Galaxy"), Galaxy Computer Services, Inc. v. Lara Baker, et al., Adversary Proceeding No. 03-1185, Judge Stephen S. Mitchell held that:

> The Bill of Sale executed by Los Alamos National Bank to Galaxy CSI, LLC ("Galaxy CSI") on March 31, 2003 conveyed only the debtor's accounts (including accounts receivable) and contracts receivables. The Bill of Sale did not convey any contract rights other than the right to receive payments due or becoming due as a result of the performance of the contracts and did not convey the debtor's rights under the employment agreements with Defendants, Baker and Sullivan, or under the non-disclosure and non-solicitation agreement with Defendant, Pinnacle Financial Strategies.

*See* Los Alamos National Bank's Response to Galaxy CSI's Statement of Undisputed Material Facts in Support of CSI's Motion for Partial Summary Judgment in Accordance With D.N.M.L.R.-CIV 56.1(b), Ex. 1 thereto. The Court is unclear as to what extent this bears on the issues to be resolved in this matter.

3

On May 7, 2003, Galaxy filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. As a result of that filing, federal law automatically stayed any effort by CSI, LAND, or others from seeking and obtaining satisfactory "consents, approvals and novations necessary to assign [Galaxy's] contracts with government entities or the rights thereunder to CSI."

CSI claims that LAND breached its obligation to return the purchase money plus interest ("Escorted Amount") where, as CSI contends, CSI was never satisfactorily assigned the government contracts.

### III.  Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-

movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

## IV.     Discussion

In order to prevail on its claim for breach of contract, CSI must show (1) a valid, enforceable contract exists between CSI and LAND; (2) LAND breached the contract by failing to perform a contractual obligation when that performance was called for; and (3) LAND's breach caused CSI's injury. *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776 (N.M. 1993); *Cochrell v. Hiatt*, 638 P.2d 1101 (N.M.App. 1981); *State Farm General Ins. Co. v. Clifton*, 527 P.2d 798; *see also* UJI 13-801, 13-822, 13-843 NMRA (2005).

### A.     There is a Genuine Issue of Material Fact Regarding Ambiguity of Certain Bid Language

New Mexico courts require that contracts be factually supported by an offer, an acceptance, consideration, and mutual assent. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N. M. 728, 731(1996). Both parties to the agreement must express mutual assent to the contract, with acceptance of the offer manifested by unconditional agreement to all of the terms of the offer and an intention to be bound thereby. *Stevenson v. Louis Dreyfus Corp.*, 112 N. M. 97, 99 (1991) (citing *Tatsch v. Hamilton-Erickson Mfg. Co.*, 76 N. M. 729, 733 (1966)). Whether mutual assent is present here appears to be the sole dispute on the existence of a contract in the instant case. *See* Resp. at 8 ("CSI's Motion for Partial Summary Judgment is premised upon terms of a contract that do not exist.

5

In order for there to be a valid enforceable contract, the parties must have agreed upon its terms."). When the contracting parties' expressions of mutual assent are clear and unambiguous, a court must give effect to those expressions. When those expressions lack such clarity, they are ambiguous and subject to interpretation. Ambiguity "is best understood as a proxy for describing lack of clarity in the parties' expressions of mutual assent. The term, as it has been employed, incorporates a variety of conceptual problems including the distinctive notions of ambiguous syntax, ambiguous terms, vagueness, and general lack of clarity." *C.R. Anthony v. Loretto Mall Partners*, 112 N.M. 504 (1991).

      Whether an agreement contains ambiguity is a matter of law to be decided by the trial court. *Levenson v, Mobley*, 106 N.M. 399, 401 (1987). If the court finds ambiguity, the jury (or the court as the fact finder in the absence of a jury) resolves the ambiguity as an issue of ultimate fact before deciding issues of breach and damages. *Paperchase Partnership v. Bruckner*, 102 N.M. 221, 223, 693 P.2d 587, 589 (1985). Under New Mexico law, when determining whether a contract is ambiguous, courts may look beyond the four corners of the contract, even if the language of the contract appears to be unambiguous. *C.R. Anthony Co.*, 112 N.M. at 509. The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. *Id.* at 508-09. If the evidence is so plain that no reasonable person could hold any way but one, it is permissible for the court to interpret the meaning as a matter of law. *Id.* at 510. If, on the other hand, the agreement is reasonably and fairly susceptible to different constructions, ambiguity exits. *Vickers v. North Am. Land Dev., Inc.*, 94 N.M. 65, 68 (1980). Where, as here, the proffered evidence of surrounding facts and circumstances is disputed, turns on the credibility of witnesses, or is susceptible to conflicting inferences, the

meaning must be resolved by the finder of fact. *C.R. Anthony Co.*, 112 N.M. at 510.

The meaning of the following Bid language is at issue:

> CSI shall place the bid amount into an interest bearing account (the "Escorted Amount"). The Escorted Amount shall be released and delivered to the bank when CSI has received all consents, approvals and novation necessary to assign the contracts with government entities or the rights thereunder to CSI, each such consent, approval or novation in form and substance satisfactory to CSI. In the event CSI fails to obtain any such consent, approval or novation, on or before April 10, 2003, the Escorted Amount and any interest thereon shall be returned to CSI and the Collateral shall be returned to the Bank unless otherwise agreed to in writing by CSI.

*See* Doc. 33, ¶ ¶ 9, 10.

CSI contends this language is unambiguous and the parties' respective signatures thereon are clear evidence of mutual assent thereto. *See* Mem. in Supp. of CSI's Mot. at 4 (citing CSI's Stmt. Undisp. Mat. Facts, ¶¶ 7, 12, 14). Thus, CSI asserts return of purchase money plus interest is required because approvals and novations meeting CSI's subjective criteria were not received. LAND, on the other hand, asserts that there was no meeting of the minds regarding, *inter alia,* establishment of the account holding the "Escorted Amount" and the conditions under which the funds would be returned. LAND argues that it believed at the time of formation, and believes now, that the language clearly required CSI to establish a true escrow account as condition precedent to return of the funds, which it did not. CSI contends that if, in fact, a true escrow account was contemplated by the parties, the Bid would contain language referencing three contracting parties (buyer, seller, and escrow agent), not just two.

The Court finds the Bid term describing the specific type of account to be established is indeed ambiguous. Thus, the question becomes whether both parties' interpretations are reasonable, creating mutual mistake, for when one party meant one thing, and the other party meant another, and the

7

difference goes to the essence of the contract, there is no contract unless one party knew or had reason to know what the other party meant or understood. *Trujillo v. Glen Falls Ins. Co.*, 88 N.M. 279 (1975); Restatement (Second) of Contracts § 20. There remains a genuine dispute regarding what understanding can be considered reasonable under the circumstances and, thus, the Court finds judgment as a matter of law improper.

**B.     Genuine Issue of Fact Exist Regarding Whether There Was a Breach**

Assuming solely for purposes of analysis the Bid does constitute an enforceable contract between CSI and LAND, CSI alleges LAND failed to perform a contractual obligation when that performance was called for. *Cochrell v. Hiatt*, 638 P.2d 1101 (N.M. App. 1981); *see also* UJI 13-822, 23 NMRA (2005). As discussed below, however, factual issues remain in need of resolution and the Court cannot determine as a matter of law whether there was a breach.

CSI argues that no genuine issue exists to preclude summary judgment in its favor on its claim for breach of contract because LAND breached its contractual obligation to return purchase money that CSI paid to LAND in the event CSI was unable to secure satisfactory assignments of the government contracts as a matter of law. Here, again, CSI's Motion relies primarily on the express terms of the bid, which the court has determined to be ambiguous.

LAND contends that it has fully performed its obligations and CSI is not entitled to return of the purchase money. LAND's reasoning is two-fold. First, LAND contends that CSI was indeed "assigned" the government contracts at issue in the form of new government contracts that CSI was able to negotiate and obtain solely by virtue of its interim performance thereof pursuant to its contract with LAND. Thus, LAND concludes that CSI received all benefit due it under the contract, for CSI (a) performed services for the government for substantial profit while assignment thereof was

8

pending, and (b) ultimately secured government contracts tantamount to those it bargained for. Accordingly, CSI should not be permitted to have its cake and eat it too by recovering the purchase money and enjoying assignment of government contracts it would not have obtained but for its agreement with LAND.  Second, LAND asserts that it was relieved of its obligation to return the funds, even if the contracts bargained for were not satisfactorily "assigned," for CSI failed to meet a condition precedent for the return of the purchase money by failing to place the money in an escrow account per the terms of the Bid.  Thus, LAND's failure to return the purchase money does not constitute breach.

CSI replies that the government contracts it eventually obtained, and apparently still enjoys, differ significantly from the contracts it bargained for with LAND and, therefore, the condition precedent to completion of the sale did not occur and CSI is entitled to a refund.  Specifically, CSI relies on the Bid language "in form and substance satisfactory to CSI" when determining that the new contract it entered into with the National Reconnaissance Office (NRO) is unsatisfactory because the prior Galaxy contract was a "cost plus fixed fee" contract under which the government assumed the risk of any cost overruns and the contractor was entitled to recover all costs and still make a fee for any work performed.  The new contract between CSI and NRO, by contrast, is a  "firm fixed price contract," pursuant to which the contractor (CSI) bids a price to do the work and bears the risk of any cost overruns.  Because of this purported difference, CSI does not find the new contracts satisfactory in form and substance.

In New Mexico, a promise to perform to the satisfaction of another can form the basis of a binding contract and subjective  "dissatisfaction" can only be determined in the presence of sufficient evidence thereof.  *See Atma v. Munoz*, 146 P.2d 631 (N.M. 1944).  The standard applied for

9

determining whether such a contract is binding is that "the dissatisfaction must be real and in good faith." *Id.* at 633.  Here, CSI offers evidence of subjective, good-faith dissatisfaction by noting the differences between the original Galaxy government contracts and those CSI negotiated.  *See* CSI's Stmt. Undisp. Mat. Facts, *¶¶* 32-35, Ex.s C, D thereto.  LAND responds that CSI offers insufficient evidence that the new contracts are less favorable, referencing an e-mail message dated April 21, 2003 in which CSI's Gary Sullivan references CSI's new contract with NRO as quite favorable.  *See* LAND's Resp. to CSI's Stmt. Undisp. Mat. Facts at 15, ¶¶ 33-35.  At this juncture, the Court cannot determine as a matter of law whether CSI's alleged dissatisfaction is in good faith.

Regarding LAND's contention that CSI failed to establish the proper escrow account as condition precedent to return of the funds, CSI responds that "the task [of establishing the proper account] would more likely and conveniently be undertaken by a bank such as LAND, and LAND never indicated that CSI should place the funds into an escrow account with a third party."  Reply at 3.  Yet, the Bid states that "*CSI* shall place the bid amount into an interest bearing account (The "Escorted Amount")." *See Id.* (emphasis added).  Thus, per the Bid itself, CSI, not LAND, was to place the funds in the proper account--whatever type of account the parties contemplated.[2]  Moreover, the term stating that "The Escorted Amount shall be *released and delivered to the bank* when CSI has received all consents, approvals and novation necessary to assign the contracts with government entities or the rights thereunder to CSI, each such consent, approval or novation in form and substance satisfactory to CSI" lends support to the theory that the original agreement was to

---

[2]This is so in spite of CSI's argument that the Bid required CSI to "place" the money into the account, not "create" or set up the account, and its reference to telephone conversations and e-mail between Bill Bracken and Heather Boone regarding transfer of the funds, which evidence might support CSI's theory that delivery to LAND satisfied its obligation.

10

establish an escrow account. (Emphasis added.).   As discussed above, however, questions of fact remain regarding whether such account was intended to be merely interest-bearing or true escrow. The use of the term "Escorted Amount" and not "escrow account" gives rise to the factual dispute regarding whether a true escrow account was contemplated, and, if so, whether CSI failed in its obligation to establish one (or if, instead, delivery to LAND, a bank, constitutes satisfaction of CSI's obligation under the Bid).

Assuming, *arguendo*, a true escrow account was to be established by CSI and was not, the relevance of this failure is also at issue.  LAND suggests that the existence of a true escrow account, established by CSI with a third-party administrator, was a condition precedent to the return of the funds for lack of satisfactory assignment of the contracts per the Bid.  Insofar as the Court is asked to determine what, if anything, the parties contemplated as consequence should the account not be properly established, there again exists ambiguity and conflicting evidence, rendering resolution at trial necessary.  *See Paperchase Partnership v. Bruckner*, 102 N.M. 221, 223.

**V.      Conclusion**

Finding genuine issues of material fact in need of resolution as discussed herein, the Court determines that judgment as a matter of law on Plaintiff's Breach of Contract claim in Count I would be improper.  Therefore, the Motion is denied.

Wherefore,

**IT IS ORDERED** that Plaintiff Galaxy CSI's Motion for Partial Summary Judgment, filed October 6, 2004 (*Doc. 80*), is **DENIED**.

Dated July 25, 2006.

                                                                        */s/ John Edwards Conway*
                                        SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Matthew L. Hoeg, Esq,
    Earl Touchstone, Esq.
    Andrews & Kurth, LLP
    Houston, Texas

    Victor Ortega, Esq.
    Montgomery & Andrews, P.A.
    Santa Fe, New Mexico

Counsel for Defendant:

    Julia B. Rose, Esq.
    Mary E. Walta, Esq.
    Santa Fe, New Mexico